UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

| | | |
|---|---|---|
| GRANGE MUTUAL CASUALTY CO., *et al.*, | ) | |
| Plaintiffs | ) | |
| v. | ) | No. 6:06-cv-555 |
| JONI L. MACK, | ) | |
| Defendant | ) | |

PLAINTIFFS' RESPONSE OPPOSING
DEFENDANT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

Plaintiffs, by counsel, respectfully oppose Defendant's motion to dismiss because the Complaint plainly pleads a RICO claim against the Defendant. The Complaint alleges that Defendant Joni Mack joined a RICO conspiracy to make and submit fraudulent medical bills to Plaintiffs and others. The Complaint alleges that after January 2003, Defendant Joni Mack joined the RICO conspiracy through personal acts, or agreement for others to act, in perpetuation of billing fraud and obstruction of justice.

In particular, the Complaint alleges:

> 46. The forms HCFA-1500 that the RICO Conspirators used to bill the Plaintiffs are intended to be used for charges incurred by professionally-licensed medical practitioners, or by staff acting under the supervision of the licensed practitioner. In preparing and provising these bills, the RICO Conspirators represented that licensed medical practitioners either performed or supervised the services described on the bills, and charged rates equivalent to $150 per hour or more for services provided.
>
> 47. In fact, the personnel performing most if not all of the "physical therapy" services were unlicensed secretaries or other staff, who performed with no supervision by the physician or other practitioner whose name and purported signature appeared on the bill. In addition, on multiple occasions patients were provided medical treatment, including injections and prescriptions, by non-

licensed personnel without attendance or supervision by the physician whose name and purported signature appeared on the bill. The RICO Conspirators falsified the appearance of physician participation on the bills in order to induce reliance and payment upon the bills. Plaintiffs relied upon these misrepresentations in paying numerous bills for such improper medical treatment.

48. After RICO Conspirator IRC initiated collection actions in state court and Grange had initiated Grange Mut. Cas. Co. v. [Greg] Mack in this Court, RICO Conspirators knowingly, willfully and corruptly altered, withheld, concealed or destroyed, or caused others to alter, withhold, conceal or destroy, records, documents, or other objects constituting sources of discoverable information material to the proof of Grange's claims in Grange v. [Greg] Mack. In specific, RICO Conspirators knowingly, willfully and corruptly withheld or concealed computers which contained discoverable information relating to the conduct of actvities relating at least to the operations of clinics located in Corbin and Somerset, and laptop computers relating at least to the conduct of the electrodiagnostic testing schemes.

56. Defendant Joni Mack joined the RICO conspiracy at least by January 2003, and thereafter committed or agreed for others to commit acts in furtherance of the conspiracy as described at least in paragraphs 46-48, *supra*. In particular, the Defendant Joni Mack personally instructed clinic employees to add physical therapy billings for patients regardless of whether the treatment had been prescribed, performed or supervised by a licensed practitioner, in furtherance of the RICO Conspirators' schemes to defraud Plaintiffs in violation of 18 U.S.C. §§1341 or 1343.

57. Defendant Joni Mack also caused computers to be removed from IRC clinics, and replaced with machines that did not retain all of the data relating to operation of the clinics before the filing of Grange v. [Greg] Mack. Defendant Joni Mack personally removed, or directed or caused others to remove, computers from clinics and withheld the computers, or directed and caused others to withhold them, from productoin during discovery in Grange v. [Greg] Mack. Finally, Defendant Joni Mack also instructed clinic employees to destroy paper documents relating to the treatment of patients in the clinics. Each of these acts constitutes corruptly altering, destroying, mutilating, or concealing an object with intent to impair the object's integrity or availability for use in an official proceeding, in violation of 18 U.S.C. §1512(b) or –(c).

Pursuant to Fed. R. Civ. P. 9(b), Exhibit (2) of the Complaint identifies communications in furtherance of the fraudulent schemes extending at least into May 2004. Defendant Joni Mack's acts of fraud and obstruction of justice, as alleged in paragraphs 56-57, extended at least into 2004.

It is clear that these allegations plead a cognizable RICO claim against Defendant Joni Mack. By joining a pre-existing RICO conspiracy, and acting (or agreeing for other to act) in continuing it, Defendant Joni Mack is jointly and severally liable for all of the damages caused both before and since her joinder in the conspiracy.

The law is equally clear that those damages include increased litigation expenses incurred by the acts of withholding, concealing or destroying information in violation of 18 U.S.C. §1512. *See* Ticor Title Ins. Co. v. Florida, 937 F.2d 447, 451 (9th Cir. 1991) (fees incurred in defending third-party litigation properly included in treble damages); Burger v. Kuimelis, 325 F. Supp.2d 1026, 1035 (N.D. Cal. 2004) ("Legal expenses are concrete financial losses ... and thus are recoverable under RICO") (allowing amendment of RICO claims to seek recovery of legal expenses incurred in defending government investigations) (citations omitted); Clark v. Stipe Law Firm, LLP, 320 F. Supp.2d 1207, 1213 (W.D. Okla. 2004) (RICO claim stated to recover "out-of-pocket costs, including professional fees" in defense of government investigations); Tribune Co. v. Purcigliotti, 869 F. Supp. 1076, 1100 (S.D.N.Y. 1994); *aff'd*, 66 F.3d 12 (2d Cir. 1995) (trebling medical and legal costs of defending workers compensation insurance claims "which foreseeably and directly result from defendants' alleged violative conduct, constitute injury by reason of a RICO violation").

Plaintiffs suffered those damages at least through 2006,[1] and Defendant Joni Mack is jointly and severally liable for them. *See* Beck v. Prupis, 529 U.S. 494, 500 (2000) ("To determine what is means to be 'injured ... by reason of' a 'conspiracy,' we turn to the well-established common law of civil conspiracy." *See also*, Terrell v. Childers, 920 F. Supp. 854,

[1]A Table summarizing Plaintiffs' currently-known damages has been produced in Rule 26 disclosures, and a copy is attached as Exhibit 1.

866 (N.D. Ill. 1996) ("A RICO conspiracy is governed by 'traditional concepts of conspiracy law'").

At common law, "co-conspirators might be liable for acts committed prior to their joining the conspiracy." Daniel Boone Area School District v. Lehman Bros., 187 F. Supp.2d 400, 414 (E.D. Pa. 2002). "[T]hose who, with knowledge of the conspiracy, aid or assist in carrying out the purposes of the conspiracy make themselves parties thereto and are equally liable to or guilty with the original conspirators." Nanavati v. Burdette Tomlin Memorial Hospital, 857 F.2d 96, 119 (7th Cir. 1988), *cert. denied*, 489 U.S. 1078 (1989) (citations omitted). This is not a new concept in the common law. *See* Lefco v. U.S., 74 F.2d 66, 68 (3rd Cir. 1934) ("Those who come on later and cooperate in the common efforts to obtain the unlawful results become parties thereto and assume responsibility for all done before") (citations omitted). Thus, once Defendant Joni Mack decided to join the conspiracy, Plaintiffs had up to four years to sue her for damages inflicted upon them both before and after her joinder. Agency Holding Corp. v. Malley-Duff & Assoc., 483 U.S. 143, 156 (1987) (applying four-year statute of limitations to civil RICO actions).

As an alternative to principles of common law conspiracy, courts also have noted that "the civil action provision of RICO was patterned after the Clayton Act." *Id.*, at 150. If the court applies antitrust principles, then the Complaint plainly pleads a continuing RICO conspiracy and violations extending from 1999 until at least 2004. Consequently, "each time a plaintiff is injured by an act of the defendants a cause of action accrues to him to recover the damages caused by that act and that, as to those damages, the statute of limitations runs from the commission of the act." Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 338 (1971); In re K-Dur Antitrust Litigation, 338 F. Supp.2d 517, 551 (D. N.J. 2004). "[E]ach overt act that is part of the

violation and that injures the plaintiff ... starts the statutory period running again, regardless of the plaintiff's knowledge of the alleged illegality at much earlier times." Klehr v. A.O. Smith Corp., 521 U.S. 179, 189 (1997).

The court need not decide between these measures of recoverable damages at the pleading stage. Because the Complaint alleges either late joinder to a RICO conspiracy or a continuing RICO conspiracy and violation, "it is premature at this point to limit the time frame for which [defendant] could be held liable as a co-conspirator[.]" Daniel Boone, *supra*.

In seeking dismissal Defendant Joni Mack argues (1) the statute of limitations allegedly expired because she joined the management of RICO Conspirator Injury & Rehab Centers before December 2002 (Memorandum, at 3, 8, 10); (2) Plaintiffs cannot plead a post-2002 RICO violation for lack of any cognizable "acts of racketeering activity," or a "pattern of racketeering activity" (*id.*, at 4, 11-15); and (3) Plaintiffs suffered no damages after December 2002 (*id.*, at 4, 9, 11, 15). Defendant's assertions are simply incorrect.

**1. Defendant's Participation In The Management Of Injury & Rehab Does Not By Itself Trigger A Statute Of Limitations.**

Plaintiffs' Complaint does allege that Defendant Joni Mack joined the management of RICO Conspirator Injury & Rehab by January 2003 (¶¶8, 9, 56). However, Injury & Rehab is not alleged to be the RICO enterprise. Instead, the RICO enterprise is alleged to be an association in fact of individuals and entities which existed from at least 1999. *Id.*, at ¶51. Plaintiffs have not alleged that Defendant's being part of a RICO Conspirator's management constitutes a RICO violation. Moreover, even membership in the RICO enterprise, without more, does not create a RICO violation to trigger a RICO statute of limitations. *See* Reves v. Ernst & Young, 507 U.S. 170, 183 (1993) ("one is not liable ... unless one has participated in the operation or management of the enterprise itself"); Sims v. The Ohio Cas. Ins. Co., 151 Fed. Appx. 433, 435 (6th Cir.

2005), *cert. denied*, 549 U.S. 943 (2006) ("The four-year period begins to run when a party knew, or through exercise of reasonable diligence should have discovered, that the party was injured by a RICO violation").

Instead, the Complaint alleges that Defendant Joni Mack joined the RICO Conspiracy by January 2003, and then specifically committed a RICO violation in 2004 when she conducted, or instructed or agreed for others to conduct, the affairs of the RICO enterprise through continuing acts of mail fraud, wire fraud or obstruction of justice. Complaint, at ¶¶56-58. It is her agreement or acts in furtherance of the agreement, to go beyond Injury & Rehab into conducting the affairs of the broader RICO enterprise, that triggers the statute of limitations. *See* Goren v. New Vision Int'l, Inc., 156 F.3d 721, 731 (7th Cir. 1998) ("section 1962(d)'s target, like that of all provisions prohibiting conspiracies, is the agreement to violate RICO's substantive provisions").

**2. The Complaint Pleads Post-2002 "Acts Of Racketeering Activity" In Furtherance Of A Continuing RICO Conspiracy.**

Plaintiffs have alleged that the RICO Conspiracy and violation continued into the year 2004, through specific acts of mail fraud (Complaint, at ¶54 and at Complaint Exh. 2); alleged that Defendant Joni Mack personally participated in the RICO Conspiracy and violation through fraudulent practices and obstruction of justice in 2004 (*id.*, at ¶¶56-58); and alleged that Plaintiffs have been damaged in fact by these injuries. *Id.*, at ¶58.

In seeking dismissal, Defendant first asserts that Plaintiffs admitted they stopped paying Injury & Rehab bills in 2002. That is incorrect. Plaintiffs' actual statement is that "Grange ultimately did not rely upon post-2002 fraudulent bills" (4/19/07 Response opposing dismissal, at 10) (Dkt.#10). Plaintiffs do not admit that they did not **pay** any post-2002 bills. It is correct that Plaintiffs did not **intend** to pay any such bills submitted from RICO Conspirator Injury & Rehab, but that is not an admission that Plaintiffs paid no post-2002 bills at all.

Defendant next asserts that the Plaintiffs' allegations of "spoliation" cannot be related either to cognizable injuries or to a RICO "pattern of racketeering activity." These assertions are equally incorrect. First of all, Plaintiffs have not made generic "coverup allegations" disfavored in Midwest Grinding Co. v. Spitz, 976 F.2d 1016, 1024 (6th Cir. 1992). Instead, the Complaint alleges that Defendant Joni Mack engaged in statutory obstruction of justice, which is in itself a distinct "act of racketeering activity" pursuant to 18 U.S.C. §§1512 and 1961(1)(B). As noted in Plaintiffs' April 2007 Response opposing dismissal, tampering with a single computer may violate §1512, and, therefore, serve as a §1961(1) predicate act. *See* United States v. Levine, 477 F.3d 596 (8th Cir.), *cert. denied*, 127 S.Ct. 3023 (2007) (upholding conviction for §1512 obstruction of justice based upon tampering with files on a single laptop). *See also*, Neibel v. Trans World Assurance Co., 108 F.3d 1123, 1129 (9th Cir. 1997) (destruction of records "while litigation was pending" is enough circumstantial evidence for a jury to find joinder in RICO conspiracy). Midwest Grinding itself acknowledges that direct "perjury and destruction of evidence in bankruptcy action might serve as predicate act in subsequent RICO suit). 976 F.2d at 1022 (citation omitted).

Finally, Defendant's assertion that the Complaint fails to plead a "pattern of racketeering activity" is utterly without merit. Her assertion is based upon the assumption that pre-2003 "acts of racketeering activity" cannot be part of the same pattern as post-2002 acts. But the RICO statute itself allows as little as two acts within a 10-year period. 18 U.S.C. §1961(5). Caselaw has refined the requirement to stress "'Continuity' ... both a closed- and open-ended concept, referring either to a close period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." H.J., Inc. v. Northwesstern Bell Telephone Co., 492 U.S. 229, 241 (1989).

Here, the Complaint specifically alleges continuous misconduct from at least 1999 through 2004, and actually extends at least through 2006 when Plaintiffs received their final judgment in Grange v. [Greg] Mack. *See* Blue Cross and Blue Shield of Michigan v. Kamin, 876 F.2d 543, 545 (6th Cir. 1989):

> Each claim was complete unto itself and … involved at least one mailing, so the mail fraud ("racketeering") predicate is established for each claim. The claims were submitted over a protracted period of time which was open-ended. … if he had not been caught, there is no reason to believe [the defendant] would not still be submitting false claims.

*See also*, Moon v. Harrison Piping Supply, 375 F.Supp.2d 577, 601 n.17 (E.D. Mich. 2005), *rev'd in part on other grounds*, 465 F.3d 719 (6th Cir. 2006) (Kamin's plaintiff "sufficiently alleged continuity ... where each false claim involved a separate and distinct insured and at least one mailing, and there were two different schemes involving different types of false claims"). Even if a statute of limitations may bar Plaintiffs from recovering damages against this Defendant for pre-2003 conduct, the pre-2003 conduct still may be used to prove a continuing RICO violation. *See* United States v. Eppolito, 543 F.3d 25, 48 (2d Cir. 2008), *cert. denied*, 2009 U.S. LEXIS 739 (2009) ("[C]hanges in membership do not necessarily convert a single conspiracy into multiple conspiracies ... especially where the activity of a single person was 'central to the involvement of all' ... [a] single conspiracy [is] not transformed into multiple conspiracies 'simply by lapse of time, change in membership, or shifting emphasis in its locale of operations'") (citations omitted).

**3. Plaintiffs Have Alleged Compensable Damages**

Defendant's last argument for dismissal is another assertion that Plaintiffs suffered no compensable damages after 2002, and cannot recover for damages they suffered before 2003. As noted previously, the assertion is incorrect because Plaintiffs have alleged compensable damages

occurring as late as 2006. Also as noted previously, Plaintiffs may be entitled to claim pre-2003 damages because they filed suit against Defendant Joni Mack within four years of her joinder in the RICO Conspiracy. *See* Rotella v. Wood, 528 U.S. 549, 559 (2000) ("we need not and do not decide whether civil RICO allows for a cause of action when a second predicate act follows the injury, or what limitation accrual rules might apply in such a case"). "We do not say that a pure injury accrual rule always applies without modification in the civil RICO setting." Klehr v. A.O. Smith Corp., 521 U.S. 179, 188 (1997). Plaintiffs respectfully suggest that the issue simply is not appropriate for resolution on the pleadings.

**4. Summary Judgment On The Pleadings Is Not Appropriate**

Defendant's sole proffers in support of summary judgment consist of an irrelevant affidavit (regarding her participation within Injury & Rehab) and reliance upon a nonexistent admission. Plaintiffs therefore respectfully suggest that she has failed to make the threshold showing necessary to invoke summary judgment. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (initial burden is on the moving party to show there are no geniune issues of material fact); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (nonmoving party's burden of going beyond the pleadings does not begin until the moving party has met its initial burden)

If anything, proof at this point indicates that Defendant Joni Mack instructed clinic staff in physical therapy fraud and destruction of documents at least in early 2004. *E.g.*, Exhibit 2.[2] Proof also indicates that Grange in fact paid medical bills which were funneled through dummy

[2] "paper should be going away," which effectively makes it impossible to compare treatment notes with the final computer-generated bill in order to identify fraudulent charges added after the fact. Personally identifiable information has been redacted from the Exhibit pursuant to the confidentiality order in effect in Grange v. [Greg] Mack.

companies in order to continue the business of Injury & Rehab. Exhibits 3-5.[3] By providing these exhibits, Grange does not intend to concur in tranforming Defendant's motion to dismiss into a motion for summary judgment. Instead, the documents (which are among those underlying the allegations of the Complaint) illustrate why this case is not appropriate for summary judgment on the pleadings.

**Conclusion**

Defendant's motion to dismiss fails to address the straightforward allegations of the Complaint, particularly in light of the rule that Plaintiffs should receive the benefit of all reasonable inferences which may be drawn from their allegations. Evans v. Pearson Enterprises, Inc., 434 F.3d 839, 843, 847 (6th Cir. 2006); Trzebuckowski v. City of Cleveland, 319 F.3d 853, 854 (6th Cir. 2003). Because Defendant's sole proffers in support of summary judgment consist of an irrelevant affidavit (regarding her participation within Injury & Rehab) and reliance upon a nonexistent admission, her alternative motion for summary judgment should be denied as well. A proposed order is attached for the court's consideration (Exhibit 6).

Respectfully submitted,

FROST BROWN TODD, LLC
Christopher S. Burnside
Amy D. Cubbage
Robert W. Dibert

*/s/ Robert W. Dibert*
400 W. Market St., 32nd Floor
Louisville, KY 40202
(502) 589-5400
Counsel for Plaintiffs

[3] After the Commonwealth declared Injury & Rehab's business illegal (Exhibit 3), its principal swore an affidavit that the company ceased doing business in October 2004 (Exhibit 4). Within months, Grange's payment for an ostensibly separate medical practice was funneled to Injury & Rehab (Exhibit 5). These documents are attached after being redacted to withhold nonpublic personally identifiable information, pursuant to the confidentiality order in effect in Grange v. [Greg] Mack. Today, Grange does not know exactly how many shell companies were established, or how many payments ultimately were funneled through them.

CERTIFICATE OF SERVICE

I certify that a copy of this Report was served via the Court's *cm/ecf* system, upon:

Russell B. Morgan
Jonathan D. Rose
BRADLEY ARANT BOULT CUMMINGS, LP
1600 Division St., Suite 700
P.O. Box 340025
Nashville, TN 37203

on January 26, 2009.

*/s/ Robert W. Dibert* .
Attorney for Plaintiffs