UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| GRANGE MUTUAL CASUALTY CO., et al., | ) ) ) |
| Plaintiffs, | ) ) Civil Action No. 6: 06-555-DCR ) |
| V. | ) ) |
| JONI L. MACK, | ) **MEMORANDUM OPINION** ) **AND ORDER** |
| Defendant. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendant Joni Mack's ("Mack") motion to dismiss or, in the alternative, motion for summary judgment. [Record No. 23] Plaintiffs Grange Mutual Casualty Company, Grange Indemnity Insurance Company, and Trustguard Insurance Company oppose the motion and ask that the Court allow their suit to go forward. For the reasons discussed herein, the Court will deny Mack's motion to dismiss and her alternative motion for summary judgment.

**I.  Background**

At issue is an alleged conspiracy involving expenses charged to Plaintiffs for unnecessary or nonexistent medical supplies and procedures. Members of the conspiracy include health care providers, medical diagnostics centers, medical technicians, and various affiliated individuals who are claimed to have submitted fraudulent bills to Plaintiff insurance

companies beginning in at least 1998. Specifically, these bills were for electrodiagnostic nerve studies ("NCV tests"), magnetic-resonance imaging tests ("MRIs"), medical equipment, and physical therapy services, all of which were improperly rendered to patients being treated for vehicle accident-related injuries. The conspirators allegedly "coached" referring physicians to document patients' records in such a way as to justify NCV tests and MRIs. Thereafter, the physicians leased the NCV and MRI testing equipment from the conspirators – a number of whom are NCV technicians – and these technicians conducted the tests. As part of this alleged scheme, the conspirators operated clinics, like the Injury & Rehab Centers of KY ("IRC"), which catered specifically to victims of automobile accidents. The IRC overcharged Plaintiff insurance companies through double-billing, manipulating billing codes, providing unnecessary supplies, and billing for services provided by unlicensed, rather than licensed, medical practitioners. Plaintiffs paid these charges pursuant to Kentucky's "no-fault" insurance law, which requires insurance companies to pay for certain "reasonable charges incurred" from motor vehicle accidents. [Record No. 1] However, they allege that the tests were of no diagnostic value for the patients, and that the tests did not assist or change the physicians' medical opinion or care of the patients. In short, the physicians, together with the conspirators, formed a scheme to exploit Kentucky insurance laws through fraudulent billing and medical testing practices, all for their own financial gain.

Plaintiffs earlier initiated a civil RICO cause of action against Mack's husband and other members of the alleged conspiracy. *See Grange Mut. Cas. Co. v. Mack*, No. 3: 02-110

(E.D. Ky., filed Dec. 4, 2002) [hereafter, *Grange I*]. Here, Plaintiffs allege that Mack joined this conspiracy in January 2003 when she became an employee and assumed a management position with the IRC, a named co-conspirator in *Grange I*. In her role as a co-conspirator, Mack allegedly instructed IRC employees to bill for specific treatments whether or not they had been prescribed or properly performed. It was further alleged that she caused computers and documents to be removed, withheld, and/or destroyed during discovery in *Grange I*. As a result, Plaintiffs filed a Complaint with this Court on December 28, 2006, stating claims against Mack under (1) the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) - (d); (2) common law fraud and conspiracy; (3) theft by deception, K.R.S. §§ 514.040, 446.070; and (4) fraudulent insurance acts, K.R.S. § 304.47-020. [Record No. 1] These claims stem from Mack's above-described post-2002 acts, as well as from her joint and several liability for other co-conspirators' acts.

On December 22, 2008, Mack filed the present motion to dismiss or, in the alternative, for summary judgment. She argues that Plaintiffs' claims are barred by the four-year statute of limitations for RICO claims and that the acts attributed to her cannot constitute a civil RICO claim.

## II. Standard of Review

This Court will grant a motion to dismiss under Rule 12(b)(6) "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). A court must construe the complaint in a light most favorable to the plaintiff, accept all the factual allegations as true,

-3-

and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. *See Ley v. Visteon Corp.*, 540 F.3d 376, 380 (6th Cir. 2008); *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 724 (6th Cir. 1996). "Factual allegations contained in a complaint must raise a right to relief above the speculative level." *Bassett v. Nat'l Coll. Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007)). In other words, the plaintiff's arguments "require[] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1964-1965. However, heightened fact pleading of specifics is not required – only enough facts to state a claim to relief that is plausible on its face. *See Bassett*, 528 F.3d at 426. The Court may consider the Complaint, as well as "any exhibits attached thereto, public records, [and] items appearing in the record of the case." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (citation omitted).

The standard for summary judgment differs significantly. Instead of focusing solely on the Complaint and relevant attachments, a court must consider whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. That is, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one

party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986); *Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008).

The party moving for summary judgment bears the burden of showing conclusively that no genuine issue of material fact exists. *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008). Once a moving party has met its burden of production, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Sigler v. American Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). The nonmoving party cannot rely upon the assertions in its pleadings; rather, that party must come forward with probative evidence such as sworn affidavits, to support its claims. *Celotex*, 477 U.S. at 324. In making this determination, the Court must review all the facts and the inferences drawn from those materials in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587.

### III.   Analysis

RICO authorizes a civil cause of action for any person injured in his business or property by reason of a violation of 18 U.S.C. § 1962. 18 U.S.C. §§ 1961 *et seq*. In turn, § 1962 lays out a list of prohibited "racketeering activities," which includes mail or wire fraud, as well as conspiracy to commit those offenses. To allege a RICO violation, a plaintiff must establish that the defendants engaged in a "pattern of racketeering activities," defined as "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within 10 years . . . after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). The two acts of racketeering activity Mack

is alleged to have committed are mail or wire fraud and withholding or destroying evidence, both violations of 18 U.S.C. § 1341 or 1343, and 18 U.S.C. § 1512(b) or (c), respectively. Both are contemplated as "racketeering activity" under 18 U.S.C. § 1961(1). However, Mack urges the Court to dismiss the suit against her based on application of the four-year statute of limitations and failure of the acts alleged to constitute a valid civil RICO claim.

### A. Civil RICO Statute of Limitations

Because RICO does not actually contain a statute of limitations provision, both the limitations period and its accrual have been the subject of some debate and confusion in past years. *See* PAUL BATISTA, CIVIL RICO PRACTICE MANUAL § 4.13 (3d ed. 2008). However, the Supreme Court has stated that civil RICO actions are subject to a four-year statute of limitations. *See Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143, 156 (1987). In *Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997), and *Rotella v. Wood*, 528 U.S. 549 (2000), the Supreme Court rejected both the "last predicate act" accrual rule and the "injury and pattern discovery" accrual rule used by a number of federal appellate courts.

The Sixth Circuit had previously applied the "injury and pattern discovery rule" which dictates that "a civil RICO cause of action begins to accrue as soon as the plaintiff discovers, or reasonably should have discovered, both the existence and source of his injury and that the injury is part of a pattern." *Isaak v. Trumbull Sav. & Loan Co.*, 169 F.3d 390, 399 (6th Cir. 1999) (internal citations omitted). However, in *Klehr* and *Rotella*, the Supreme Court rejected the last predicate act rule and the injury and pattern discovery rule, leaving open the

possibility of two remaining accrual rules: the "injury discovery" rule and the "injury occurrence" rule. *Rotella*, 528 U.S. at 554.

Under the injury discovery rule, the statute of limitations is activated "when a plaintiff knew or should have known of his injury." *Id.* at 553. Although the Sixth Circuit has not explicitly adopted a new accrual rule, it has applied the injury discovery rule in its few post-*Rotella* civil RICO cases. *See Taylor Group v. ANR Storage Co.*, 24 F. App'x 319, 325 (6th Cir. 2001) (unpublished); *Sims v. Ohio Cas. Ins. Co.*, 151 F. App'x 433 (6th Cir. 2005) (unpublished). Accordingly, the Court will apply that rule to the foregoing analysis.

Because the Plaintiffs' Complaint details injuries identical to the injuries asserted in *Grange I*, Mack argues that Plaintiffs knew of their injury in the present case by at least December 4, 2002 (the time of the *Grange I* filing). At that time, Mack held a management position with the IRC and was married to co-conspirator Greg Mack. Mack argues that this information should have alerted Plaintiffs that Mack – along with other implicated conspirators – had violated RICO and other state laws. As a result, Mack contends that the present action which was filed on December 26, 2006, is outside the four-year statute of limitations for a civil RICO claim. In support, Mack has provided an affidavit from the payroll administrator at IRC which states that Mack held a management position with the IRC before and on December 4, 2002. [Record No. 23, Attach. 2]

The Plaintiffs allege that Mack joined the conspiracy in January 2003 and since then, personally committed two acts of racketeering in furtherance of the *Grange I* conspiracy. The specific acts include Mack instructing IRC employees to bill Plaintiffs for physical

therapy treatments that were not actually or properly conducted, as well as Mack causing computers to be removed from the IRC and replaced with computers that did not contain *Grange I* information. [Record No. 1] Plaintiffs acknowledge that illegal acts committed by Mack's co-conspirators occurred more than four years before their filing the current suit; however, they argue that Mack is liable for the damages based on the common-law principle that co-conspirators may be held liable for acts committed prior to their joining the conspiracy. *See United States v. Gravier*, 706 F.2d 174, 177 (6th Cir. 1983). Plaintiffs also argue that their claim against Mack eludes the statute of limitations because her post-2002 acts started the running of a new limitations period.

### 1. Mack's Post-2002 Acts as Independent Acts Triggering a New Statute of Limitations

The Plaintiffs allege that Mack's post-2002 acts were a new set of racketeering activities that triggered the running of a new statute of limitations separate from any statute of limitations that may have accrued as a result of *Grange I*. In support, they cite the Supreme Court's decision in *Zenith Radio Corp. V. Hazeltine Research, Inc.*, 401 U.S. 321 (1971): "[E]ach time a plaintiff is injured by an act of the defendants a cause of action accrues to him to recover the damages caused by that act and that, as to those damages, the statute of limitations runs from the commission of the act." *Zenith*, 401 U.S. at 338. However, in *Zenith* itself, and later in *Klehr*, the Supreme Court clarified this language by pointing out that "a separate new overt act generally does not permit the plaintiff to recover for the injury caused by old overt acts outside the limitations period." *Klehr*, 521 U.S. at

-8-

190. In essence, Plaintiffs are asking the Court to apply the last predicate act accrual rule which starts the limitations period running anew each time a predicate act of racketeering is committed. The Supreme Court clearly rejected this accrual rule in *Klehr*:

> [S]ome Circuits have adopted a 'separate accrual' rule in civil RICO cases, under which the commission of a separable, new predicate act within a 4-year limitations period permits a plaintiff to recover for the additional damages caused by that act. But, as in the antitrust cases, the plaintiff cannot use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period.

*Klehr*, 521 U.S. at 190.

This accrual rule was rejected in large part because it struck at the heart of one of the main objectives of civil RICO – by discouraging plaintiffs from exercising diligence in their private investigations. *Id.* at 187. "The object of civil RICO is thus not merely to compensate victims but to turn them into prosecutors, private attorneys general, dedicated to eliminating racketeering activity." *Rotella*, 528 U.S. at 557-558 (citation omitted). Civil RICO actions are intended to have a "public benefit" that should be realized through "prompt litigation." *Id*. The last predicate act accrual rule lengthens the period of time that plaintiffs have to file their causes of action, therefore allowing plaintiffs to "sit" on their claims for an indefinite period. To discourage such behavior and encourage diligence, the Supreme Court has strongly and repeatedly emphasized its preference for a shorter accrual period.

However, recognizing the need for a counterpoint to a perhaps inflexible strict accrual rule, the Supreme Court at every turn has affirmed the availability of equitable tolling in civil RICO cases. *See Klehr,* at 194-196; *Rotella*, 528 U.S. at 560-561. This doctrine allows a

plaintiff to assert a civil RICO claim where a defendant has taken steps to conceal his existence or activities through fraud, and the plaintiff, "without any fault or want of diligence or care on his part," is unable to discover the injury within the limitations period. *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946). Plaintiffs have alleged no such equitable doctrine here. Thus, Mack's post-2002 actions can only trigger the running of a new limitations period if they led to injuries separate from the injuries alleged in *Grange I*.

The claimed damages in this case total over $1 million. This sum is a combination of money Plaintiffs paid as a result of fraudulent billing charges, as well as the cost of legal fees expended to pursue their claims in various courts. [Record No. 33, Attach. 1] Under the treble damages provision of the RICO statute, Plaintiffs claim over $3 million in damages as a result of this conspiracy. *See* 18 U.S.C. §1964(c). The portion of these damages attributable to Mack's conduct, however, is unclear. The Plaintiffs weakly assert that her post-2002 actions produced "increased litigation expenses." [Record No. 33] Their attached damages worksheet details nine state court lawsuits with associated expenses, along with a listing of the *Grange I* defendants, and a notation that "Defendant Joni Mack is alleged to be jointly and severally liable . . . for all of these elements of damages." [Record No. 33, Attach. 1]

Although courts do not require a civil RICO plaintiff to quantify the exact amount of her injury in order to allege such injury, the specific argument that Plaintiffs espouse here requires some showing that a new injury outside of the earlier injuries has been incurred. *See Potomac Elec. Power v. Elec. Motor & Supply*, 262 F.3d 260 (4th Cir. 2001). Plaintiffs, in

-10-

fact, make almost no attempt to distinguish the injuries from *Grange I* from the injuries alleged here.  Therefore, this Court cannot endorse Plaintiffs' argument that Mack's post-2002 actions prompted the running of a new limitations period.

### 2. Mack's Post-2002 Acts as Part of a Continuing Conspiracy

The Plaintiffs seek another route around the statute of limitations by relying on the theory of joint and several conspirator liability.  Under this theory, they concede that Mack's post-2002 acts led to the injuries asserted in *Grange I*, but argue that they did not and could not have known at the initiation of the *Grange I* suit that Mack was a co-conspirator.  Mack counters that she was at that time employed by one co-conspirator and married to another.  Therefore, she claims that under the injury discovery accrual rule, the Plaintiffs had the requisite knowledge in early 2002 to trigger the running of the limitations period.

The Plaintiffs' argument reveals faint traces of the equitable tolling doctrine.  Since they had no way of knowing that Mack was involved in the conspiracy, they argue that they should not be punished for not having asserted a cause of action against her earlier.  In other words, they knew of their injury well before they were aware of all of its sources.  Although the Supreme Court and the Sixth Circuit have not explicitly formulated it as such, the injury discovery rule requires not only that the plaintiff know of his injury, but also that the plaintiff know the source of his injury.  *See Rotella*, 528 U.S. at 556-557 (analogizing the injury discovery rule in civil RICO cases to the discovery rule in medical malpractice cases); *Prudential Ins. Co. of Am. v. U.S. Gypsum Co.*, 359 F.3d 226, 233 (3d Cir. 2004) ("In

addition to the injury, the plaintiffs must also have known or should have known of the source of their injury.").

Assuming, *arguendo*, that Plaintiffs did not know Mack was a conspirator in 2002, the Court is forced to turn to the question of whether Plaintiffs *should* have known she was a conspirator. Based on the current record, it is impossible for the Court to make that determination. The only evidence Mack provides in support of her position is an affidavit from a payroll administrator stating that Mack was an IRC employee at the time of the *Grange I* filing. The unadorned fact that she was employed by co-conspirator IRC does not necessitate the conclusion that Mack herself was a conspirator.

Under common law notions of conspiracy, "knowledge and intent to join the conspiracy" are still required to confer co-conspirator liability on a defendant. *United States v. Driver*, 535 F.3d 424, 429 (6th Cir. 2008). Proof of knowledge can be satisfied by a showing that "the defendant knew the essential object of the conspiracy." *United States v. Morrison*, 220 F. App'x 389, 393 (6th Cir. 2007) (unpublished). Although these rules are culled from criminal conspiracy cases that have no connection with civil RICO, they still apply. The Supreme Court has stated that "conspiracy" as employed and described in the RICO statute should be applied in its "conventional sense" with its accompanying "well-established principles"; "[w]hen Congress uses well-settled terminology of criminal law, its words are presumed to have their ordinary meaning and definition." *Salinas v. United States*, 522 U.S. 52, 63-65 (1997).

Mack has presented no evidence showing that she actually joined or had an idea of the object of the conspiracy at the time of the *Grange I* filing. Simply serving as an employee within one of the conspirator organizations cannot serve the basis for conspirator liability. Although Mack may be in the delicate position of arguing for a statute of limitations defense while asserting her innocence of the underlying substantive claim, without more, the Court is unable to find that Plaintiffs did or should have known of her involvement in the conspiracy before January 2003. At this pre-discovery stage in the proceedings, finding for Mack on this issue would require extensive speculation based on facts that are not before the Court.

### B. Civil RICO Claim Requirements

Mack attacks the validity of the Plaintiffs' substantive civil RICO claim based on two arguments: (1) the post-2002 acts do not constitute a "pattern of racketeering activity"; and (2) the post-2002 acts did not cause the Plaintiffs any injury.

#### 1. Civil RICO's Pattern Requirement

Like its statute of limitations, civil RICO's pattern requirement has spawned some confusion throughout the years. *Am. Eagle Credit Corp. v. Gaskins*, 920 F.2d 352, 352 (6th Cir. 1990). The statute itself requires that a plaintiff allege that the defendants acted through a "pattern of racketeering activity," but courts have been hard-pressed to flesh out the text's actual meaning. 18 U.S.C. § 1962. The Supreme Court has stated that the touchstone the pattern requirement is known as the "continuity plus relationship" test. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229 (1989). The continuity plus relationship test

-13-

dictates that the alleged predicate acts must be continuous for a sufficiently long period of time and the acts must be related. *See* BATISTA, *supra*, at § 4.03[B]. Regarding continuity – the first prong – the Supreme Court references either "a closed period of repeated conduct, or [] past conduct that by its nature projects in to the future with a threat of repetition." *H.J. Inc.*, 492 U.S. at 241-242; *see also Michalak v. Edwards*, 124 F.3d 198 (6th Cir. 1997) (unpublished).

Mack argues that the two predicate acts she is alleged to have committed were neither a part of a closed period of repeated conduct nor a set of actions projecting the threat of repetition in the future. However, the Plaintiffs allege that the *Grange I* conspirators committed numerous acts of mail and wire fraud over a period of at least six year and that Mack's post-2002 acts were a continuation of that same conspiracy. The issue is whether Mack's acts can be tacked on to the acts of the alleged co-conspirators or whether they should be viewed in isolation. Based on the Court's finding that Mack has not presented evidence showing that Plaintiffs knew of her involvement in the conspiracy before January 2003, the Court will assume that Mack joined an already-existing conspiracy within the applicable statute of limitations.

The two acts attributed to Mack are destroying evidence and directing employees to commit fraud. Viewed together with the earlier-alleged conspiratorial acts, her acts satisfy the continuity plus relationship test. In *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016 (6th Cir. 1992), the Sixth Circuit found that a "one-shot scheme that lasted, at most nine months," did not meet the continuity requirement. *Midwest Grinding*, 976 F.2d at 1024.

Here, however, the Plaintiffs allege that the overall scheme began at least in 1999 and lasted through Mack's post-2002 acts. It was a complex operation spanning numerous individuals and organizations, with the sole alleged purpose of defrauding Plaintiffs by exploiting the Kentucky no-fault insurance laws. In *H.J. Inc.*, the Supreme Court recognized that "the threat of continuity may be established by showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business." *H.J. Inc.*, 492 U.S. at 242; *see also Brown v. Cassens Transport. Co.*, 547 F.3d 347, 354-355 (6th Cir. 2008) (finding the continuity plus relationship test satisfied by defendants' scheme to deprive workers of worker's compensation through fraud on the part of doctors, employer, and claims adjuster). Mack's claimed predicate act of submitting fraudulent bills was one part of the complex scheme that the *Grange I* conspirators are alleged to have carried out as a daily course of their business. In fact, Plaintiffs allege that some of the organizations that comprise the conspiracy were established solely to carry out the alleged illegal activities. Submitting fraudulent physical therapy bills is clearly a part of and related to that earlier activity.

Next, Mack's alleged effort to destroy evidence in *Grange I* can also be viewed as a part of the overall scheme to defraud the Plaintiffs. The act is clearly related to the conspiracy. Moreover, it qualifies as an act of racketeering within the meaning of 18 U.S.C. § 1961(1). *See also United States v. Corrado*, 304 F.3d 593, 608 (6th Cir. 2002) (discussing destruction of evidence as a predicate act in the criminal RICO context). However, the Sixth Circuit's decision in *Midwest Grinding* does suggest that predicate acts related to

concealment of evidence are not acts in furtherance of the civil RICO conspiracy. In making this suggestion, the Sixth Circuit pointed out that such acts

> do nothing to extend the duration of the underlying . . . scheme. A conspiracy ends when the design to commit substantive misconduct ends; it does not continue beyond that point merely because the conspirators take steps to bury their traces, in order to avoid detection and punishment after the central criminal purpose has been accomplished.

*Midwest Grinding*, 976 F.2d at 1024.

Although it is unclear whether the acts of concealment in *Midwest Grinding* were also acts of racketeering as defined by the RICO statute, the same rationale may be applied here. Removing computers containing data requested during discovery in *Grange I* does not necessarily threaten ongoing future harm. In fact, it is arguable whether the act can be considered part of the conspirators' overall scheme to defraud Plaintiffs through the Kentucky insurance laws. However, even if destruction of evidence is not considered an act in furtherance of the pattern of racketeering activity, Mack's argument still fails. Only one overt act in furtherance of the conspiracy is required to place co-conspirator liability on a defendant. 18 U.S.C. § 1962(d); *Beck v. Prupis*, 529 U.S. 494, 506-507 (2000) (stating that a plaintiff could sue a civil RICO conspirator who committed at least one overt act of racketeering); *Grange Mut. Cas. Co. v. Mack*, 290 F. App'x 832, 835-836 (6th Cir. 2008) (unpublished). Because Mack also allegedly committed one other overt racketeering act, she may still be held liable as a conspirator. Moreover, her acts cannot be viewed as isolated and independent acts, but as part of a larger conspiracy. Viewed as a whole, the conspiracy satisfies civil RICO's pattern requirement.

### 2. Civil RICO's Injury Requirement

Finally, Mack argues that Plaintiffs have not satisfied the elements of a civil RICO claim because they have not suffered injury by reason of Mack's post-2002 acts. Specifically, since the Plaintiffs stopped paying any bills sent to them by the IRC after filing suit in *Grange I*, Mack contends that they cannot show any injury as a result of Mack's post-2002 physical therapy billings. To show "injury by reason of a RICO violation," the plaintiff must allege "some direct relation between the injury asserted and the injurious conduct alleged." *Brown*, 546 F.3d at 357 (internal citations omitted). Plaintiffs need not prove reliance in order to satisfy the causation requirement. *See Bridge v. Phoenix Bond & Indem. Co.*, 128 S. Ct. 2131 (2008).

It is unclear whether Plaintiffs have shown any damage as a result of her post-2002 acts, on their own. However, as with the earlier analysis, the Court must view her acts as part of the overall *Grange I* conspiracy – not as isolated and independent acts. As a result, Plaintiffs have sufficiently alleged injury as a result of the overall conspiracy. The Sixth Circuit does not require that each alleged predicate act directly harm a plaintiff in order for the acts to constitute a civil RICO cause of action. *Brown*, 546 F.3d at 353 (citing *Vild v. Visconsi*, 956 F.2d 560, 567 (6th Cir. 1992)). This caselaw is supported by a reading of the statutory language.

Section 1964(c) creates a private right of action for "any person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). In turn, § 1962 makes it unlawful to operate or participate in an enterprise through a "pattern of racketeering

activity." 18 U.S.C. § 1962. Reading these two sections together, a plaintiff's cause of action comes to life when a pattern, rather than a single act of racketeering activity, causes injury to his business or property. Requiring a plaintiff to show injury as a result of each predicate act alleged to be part of the pattern of racketeering activity would be a very restrictive reading of the civil RICO statute. "RICO is to be read broadly. This is the lesson not only of Congress' self-consciously expansive language and overall approach, but also of its express admonition that RICO is to be liberally construed to effectuate its remedial purposes." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 497-498 (1985). Thus, even though Mack's post-2002 acts may not have resulted in a separate, identifiable set of injuries, her acts are claimed to be part of a conspiracy that has injured the Plaintiffs in their business. The Plaintiffs' Complaint sufficiently alleges a cause of action under the civil provisions of the RICO statute.

### IV. Conclusion

Viewing the filed Complaint in the light most favorable to the Plaintiffs, Mack's motion to dismiss fails. In addition, the factual record is not developed to the extent necessary to support Mack's motion for summary judgment. Accordingly, it is hereby

**ORDERED** that Defendant Joni Mack's motion to dismiss or, in the alternative, her motion for summary judgment [Record No. 23] is **DENIED**.

This 17th day of April, 2009.



Signed By:
*Danny C. Reeves* DCR
United States District Judge

-19-